**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Danahy Connelly,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Brent Freyberger; Matthew Cormier;<br>Officer Delameter,<br><br>　　　　Defendants. | No. CV-12-2283-PHX-FJM<br><br>**ORDER** |

Plaintiff is a prisoner in the custody of the Arizona State Prison Complex-Yuma. He bought this civil rights action under 42 U.S.C. § 1983, claiming that Phoenix Police Officers Freyberger, Cormier, and Delameter used excessive force in violation of his Fourth Amendment rights when they arrested him.

Before the court is Defendants' motion for summary judgment (doc. 41), Defendants' separate statement of facts (doc. 42), Plaintiff's response (doc. 50), and Defendants' reply (doc. 51).

## I. Background
### A. Defendants' Facts

At approximately 2:00 a.m. on October 19, 2011, Officers Freyberger and Cormier were on patrol in a fully marked City of Phoenix Police vehicle in the vicinity of 32nd Street

1   and Thomas Road in Phoenix. The officers saw Plaintiff driving eastbound in a white Dodge
2   Avenger. They ran a computerized license plate check on the car and discovered that the
3   plate was registered to a Ford. DSOF ¶ 5. Officers Freyberger and Cormier decided to
4   conduct a traffic stop to investigate the discrepancy.

5   When the officers got behind Plaintiff's vehicle, Plaintiff increased his speed and fled.
6   He drove through a residential neighborhood at twice the legal speed limit, making many
7   quick turns in an effort to elude the officers. DSOF ¶ 8. Plaintiff ran a red light and was
8   weaving in and out of traffic lanes. DSOF ¶ 9. At this point the Officers had no information
9   as to whether Plaintiff was armed.

10  Officers Freyberger and Cormier were soon joined in the chase by another patrol car
11  driven by defendant Officer Delameter. The officers had their flashing lights and sirens
12  engaged as they pursued Plaintiff, but he refused to stop. DSOF ¶ 11. A Phoenix Police
13  helicopter soon joined in the chase and observed Plaintiff pull into an apartment complex and
14  quickly run from his vehicle toward the apartment building. Using the helicopter's public
15  address system, the air crew commanded Plaintiff to reveal himself and give up. He refused
16  to comply.

17  By this time the officers on the ground, including the Defendants, arrived at the
18  apartment complex and saw Plaintiff hiding behind a pillar. The officers repeatedly ordered
19  Plaintiff to reveal himself and get down on the ground. When he did not comply, Officers
20  Hernandez, Peelman, Freyberger and Daley rushed Plaintiff as he remained crouched behind
21  the pillar, ordered him to show his hands, and eventually got him on the ground lying face
22  down on his stomach with his arms underneath him. DSOF ¶ 15.

23  Plaintiff struggled with the officers when they tried to pull his arms out from
24  underneath him. After approximately 45 seconds of struggling, the officers were able to get
25  Plaintiff's hands out from underneath him and behind his back for handcuffing. DSOF ¶ 17.

26  Ultimately, Plaintiff pled guilty to unlawful flight from law enforcement, possession
27  of a dangerous drug and drug paraphernalia and was sentenced to prison, where he is
28  currently serving his sentence.

An investigation conducted by the Phoenix Police Department subsequently concluded that the officers did not use excessive force and acted reasonably under the circumstances. DSOF ¶ 19, Ex. 2.

### B. Plaintiff's Facts

Plaintiff's version of the facts, which we assume as true for purposes of the current motion, differs only slightly from Defendants' version. Plaintiff acknowledges that he was involved in a "short low-speed pursuit with the officers." Compl. at 3A. He also acknowledges that once at the apartment complex he "bailed out of the car and hid from [the] officers." Id. He then asserts that "once detected" he was ordered at gunpoint to lay face down on the ground (which was covered with small rocks) with his arms out to his sides. He contends he complied with this order. He then claims that when other officers arrived at the scene, "many jumped on top of me instead of simply handcuffing me," and "[o]ne of the named defendants immediately began smashing my face in the small rocks I was face down on." Id. He also claims another "named defendant" began twisting his right arm and another his left ankle. Id.

Although Plaintiff asserts that he did not resist arrest, he also acknowledges that "I attempted to get my arms from the officers to cover my face to prevent further damage." Id. Moreover, although he alleges that a "named defendant" participated in the arrest, he also admits that "[d]ue to the fact that I was face down during the assault it is unknown which defendant caused which specific injury," but "[w]hen I was lifted off the ground, all three named defendants were holding me as I made a mental note of their names." Id. at 3B-3C.

Plaintiff claims he suffered a sprained ankle, a chipped bone in his right elbow, contusions on his head, lost teeth, and "permanent bruising" of his ribs." Id. at 3B.

### II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. If the moving party makes this initial showing, the burden shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986).

The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. Summary judgment is appropriate if, taking the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court provided notice to Plaintiff pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998,) regarding his obligation to respond to Defendants' motion for summary judgment. (Doc. 43). However, Plaintiff did not address any of the arguments raised in Defendants' motion, nor did he file a separate or controverting statement of facts. A party's failure to properly respond to a motion "may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(i). Nevertheless, we will construe Plaintiff's verified Complaint as an affidavit in opposition to the summary judgment motion. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

### III. Excessive Force

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." The Fourth Amendment permits police officers to use only such force as is objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989).

In addressing a claim of excessive force, we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S. Ct. at 1872. To assess the gravity of the government's interests, we consider "the severity of the crime at issue, whether the suspect

1 poses an immediate threat to the safety of the officers or others, and whether he is actively
2 resisting arrest or attempting to evade arrest by flight." Id.

3 The reasonableness of the force used must be considered in light of the totality of the
4 circumstances, and "must be judged from the perspective of a reasonable officer on the
5 scene, rather than with the 20/20 vision of hindsight." Id. "The calculus of reasonableness
6 must embody allowance for the fact that police officers are often forced to make split-second
7 judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the
8 amount of force that is necessary in a particular situation." Id. at 396-97, 109 S. Ct. at 1872.
9 These split-second judgments are sometimes informed by errors in perception of the actual
10 surrounding facts. Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011). "Where
11 an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable
12 officer would have or *should* have accurately perceived that fact." Id.

13 Here, Plaintiff contends that his Fourth Amendment rights were violated when
14 defendants Cormier, Delameter and Freyberger used excessive force when they jumped on
15 him, held him down on a gravel surface, and pried his arms out from underneath him in order
16 to place him in handcuffs.

17 First, viewing the evidence in the light most favorable to Plaintiff, it is clear that
18 Officers Cormier and Delameter were not involved in the physical arrest of Plaintiff, and
19 therefore did not violate his constitutional rights. Plaintiff acknowledges that he does not
20 know which officers actually used force against him. Compl. at 3B-3C. However, according
21 to Phoenix Police Department's Use of Force Report, it was Officers Hernandez, Peelman,
22 Freyberger and Daley who rushed Plaintiff, forced him to the ground, and eventually placed
23 him in handcuffs. DSOF, Ex. 2. Of these officers, only Officer Freyberger is a defendant
24 in this case. Although it is clear that Defendants Cormier and Delameter were also on the
25 scene, the undisputed evidence shows that they were not involved in subduing Plaintiff.
26 Cormier and Delameter's motion for summary judgment is granted on this basis.

27 But even with respect to those officers who did use force to handcuff Plaintiff,
28 including Defendant Freyberger, we conclude that, viewing the evidence in the light most

favorable to Plaintiff, the force used by these officers was reasonably necessary under the circumstances.

First, the amount of force used is supported by the severity of the crime for which Plaintiff was apprehended. When Plaintiff realized that police officers were attempting an investigatory stop, he fled. Traveling through residential neighborhoods at twice the legal speed limit, moving in and out of traffic lanes, running a red light, and eventually abandoning his car and hiding from the officers created a serious risk for both officers and bystanders. Throughout the chase and eventual apprehension, it was unknown whether Plaintiff was armed. The officers considered the situation so dangerous as to require back-up patrol units and helicopter assistance. The significant threat faced by the officers supports the force used to apprehend Plaintiff.

Moreover, although Plaintiff contends that he complied with the officers' order to lay face down on the ground with his arms out to his side, he also acknowledges that he struggled to "get [his] arms from the officers to cover [his] face to prevent further damage." Compl. at 3A. Even accepting Plaintiff's allegation as true, his admitted resistance to the officers' efforts to handcuff him could easily have been perceived by reasonable officers on the scene as Plaintiff actively resisting arrest, thereby warranting the use of additional force to subdue and handcuff him.

In light of the totality of the circumstances–the high speed chase in the middle of the night by multiple police cars and a police helicopter, Plaintiff fleeing on foot and hiding from officers, his repeated refusal to give himself up, the unknown issue of whether Plaintiff was armed, and ultimately the struggle on the ground (even if mistakenly perceived as resisting arrest), we conclude that the officers used a reasonable amount of force in the course of Plaintiff's arrest. Accordingly, we conclude that Plaintiff's Fourth Amendment rights were not violated.

### IV. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

1  constitutional rights of which a reasonable person would have known." Stanton v. Sims, 134
2  S. Ct. 3, 4-5 (2013).  "Qualified immunity gives government officials breathing room to
3  make reasonable but mistaken judgments," and "protects all but the plainly incompetent or
4  those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).
5  Because qualified immunity is "an immunity from suit rather than a mere defense to liability
6  . . . it is effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan,
7  555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citation omitted).

8        An officer will be denied qualified immunity in a § 1983 action "only if (1) the facts
9  alleged, taken in the light most favorable to the party asserting injury, show that the officer's
10 conduct violated a constitutional right, and (2) the right at issue was clearly established at the
11 time of the incident such that a reasonable officer would have understood [his] conduct to
12 be unlawful in that situation." Torres, 648 F.3d at 1123; see also Green v. City & Cty. of San
13 Francisco, 751 F.3d 1039, 1052-53 (9th Cir. 2014).

14       Even if the Defendant Officers had used an unreasonable amount of force to subdue
15 Plaintiff, we would nevertheless conclude that they are entitled to qualified immunity on
16 Plaintiff's excessive force claim.  Where, as here, "an officer's use of force was premised on
17 a reasonable belief that such force was lawful, the officer will be granted immunity from suit,
18 notwithstanding the fact excessive force was deployed." Bryan v. MacPherson, 630 F.3d
19 805, 832 (9th Cir. 2010). Given the specific facts at issue in this case, the Defendant Officers
20 "could have reasonably believed at the time that the force actually used was lawful under the
21 circumstances." Torres, 648 F.3d at 1127.

## V. Conclusion

23 **IT IS ORDERED GRANTING** Defendants' motion for summary judgment (doc.
24 41). The clerk shall enter final judgment.

25       DATED this 11th day of March, 2015.

*Frederick J. Martone*

Frederick J. Martone
Senior United States District Judge